**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRESH & EASY, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 15-12220 (BLS) |
| Official Committee of Unsecured Creditors of Fresh & Easy, LLC,<br>Plaintiff,<br><br>vs.<br><br>First Data Corporation dba ValueLink, LLC,<br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff") of Fresh & Easy, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against First Data Corporation dba ValueLink, LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Debtor pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover

[1] The last four digits of the Debtor's federal taxpayer identification number are 8906. The Debtor's mailing address is 20101 Hamilton Avenue, Suite 350, Torrance, CA 90502.

from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtor commenced its bankruptcy case and which transfers were not authorized by the Bankruptcy Code or this Court.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtor or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Fresh & Easy, LLC,* Case No. 15-12220 (BLS), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On October 30, 2015 (the "Petition Date") the Debtor commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. [D.I. 1.] No trustee has been appointed, and the Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

9. On November 10, 2015, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. [D.I. 101]. On November 18, 2015, the U.S. Trustee appointed two additional members to the Committee. [D.I. 165].

10. On August 16, 2016, the Committee and the Debtor filed a stipulation (the "Stipulation") which granted the Committee and its successors in interest standing to pursue certain causes of action under Chapter 5 of the Bankruptcy Code. [D.I. 1138]. An order approving the Stipulation was entered by the Court on September 13, 2016 (the "Stipulation Order"). [D.I. 1204].

11. Pursuant to the schedules filed in this matter, the Debtor's liabilities exceed its assets and therefore general unsecured claims are not expected to be paid in full. [D.I. 411].

## THE PARTIES

12. Pursuant to the Stipulation and Stipulation Order, the Committee is authorized and has standing to investigate, pursue, commence, prosecute, compromise, settle, or otherwise

resolve certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action.

13. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided payment technology solutions to or for the Debtor. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 5565 Glenridge Connector, NE, Suite 2000, Atlanta, GA 30342. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

14. As more fully discussed in the *Declaration of Amir Agam Chapter 11 Petition and First Day Motions*,[2] the Debtor operated a chain of grocery stores in the Southwest United States which focused on offering high quality, freshly prepared and ready-to-eat products. In 2013, the entities then comprising the "Fresh & Easy" brand filed voluntary chapter 11 petitions. As part of a sale process held in the 2013 bankruptcy, YFE Holdings, Inc. ("YFE") formed three subsidiaries, each a Delaware limited liability company with YFE as its sole member: (i) the Debtor, (ii) non-debtor FEFOS, LLC ("FEFOS"), and (iii) non-debtor Fresh Foods, LLC (f/k/a Campus Opco, LLC) ("Fresh Foods"). As part of the sale process in the prior chapter 11 case, certain real estate was transferred to Fresh Foods, certain other real estate was ultimately transferred to FEFOS, and certain leases were transferred to the Debtor.

15. Prior to the Petition Date, the Debtor, as an operator of a chain of grocery stores, maintained business relationships with various business entities, through which the Debtor regularly purchased, sold, received, and/or delivered goods and services.

[2] D.I. 10.

16. As an operator of a chain of grocery stores, the Debtor regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtor also regularly paid for services used to facilitate its business.

17. The Debtor's financial difficulties that led to the decision to file the bankruptcy case are attributable to a combination of factors, all of which placed significant stress on the Debtor's liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) market competition which was exacerbated by mega-retailers and specialty grocery chains entering the grocery business in recent years; (ii) consistent operating losses stemming from, among other things, onerous lease obligations and underperforming retail locations, and (iii) an inability to achieve profitability after the previous chapter 11 bankruptcy. As documented in the schedules filed by the Debtor, as of the Petition Date, the Debtor's liabilities far exceeded its assets.

18. As of the Petition Date, the Debtor utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtor's business. As of the Petition Date, the Cash Management System consisted of bank accounts including: deposit/collections accounts, master depository and operating accounts, six disbursement accounts, and separate cash collateral and borrowing base accounts, all of which were held at Wells Fargo Bank, N.A. ("Wells Fargo"). [*See* Debtor's cash management motion, D.I. 17]. While certain non-debtor affiliates held bank accounts at Wells Fargo, the Debtor and the affiliates each had their own discrete set of bank accounts, designed to provide each entity with their own set of depository, operating, and disbursement accounts. *Id.*

19. Among the Debtor's bank accounts, disbursement to vendors were made from the following six accounts: a general accounts payable account ending in 1208, a wire transfer account ending in 8988, a payroll account ending in 8962, an account to provide cash to store registers ending in 9036, an account ending in 1147 for repairs and maintenance with respect to certain leases, and an account ending in 9010 for payments to alcohol vendors (collectively, the "Disbursement Accounts"). [*See* D.I. 17].

20. The Debtor drew upon the Disbursement Accounts to pay for its operational costs, including payments to its vendors, suppliers, distributors, and other creditors, including Defendant.

21. During the ninety (90) days before the Petition Date, that is between August 1, 2015, and October 30, 2015 (the "Preference Period"), the Debtor continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities, including to Defendant.

22. Upon information and belief, during the course of their relationship, the Defendant and the Debtor entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). Upon further information and belief, the Agreements concerned and related to the goods and/or services provided by Defendant to the Debtor as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. The Debtor and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

24. As identified in the Agreements identified on Exhibit A, the Debtor purchased goods and/or services from Defendant.

25. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtor's property made by the Debtor to Defendant within the Preference Period.

26. Plaintiff has determined that the Debtor made transfer(s) of an interest of the Debtor's property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $22,817.42 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor." Additionally, to the extent there are any transfers that cleared the Disbursement Account(s) after the Petition Date (the "Post-Petition Transfers"), such amounts are listed on Exhibit A and incorporated herein by reference.

27. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Stipulation and Stipulation Order, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29. During the Preference Period, the Debtor made Transfer(s) to or for the benefit of Defendant in an aggregate amount not less than $22,817.42.

30. Each Transfer was made from one of the Disbursement Accounts described *supra*, and each constituted a transfer of an interest in property of the Debtor.

31. Defendant was a creditor of the Debtor at the time of each Transfer by virtue of supplying the goods and/or services identified in this Complaint and in the Agreements to the Debtor, as more fully set forth on Exhibit A hereto, for which the Debtor was obligated to pay following delivery in accordance with the Agreements.

32. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant. See Exhibit A.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant before such Transfer(s) were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor. See Exhibit A.

34. Each Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35. Each Transfer was made during the Preference Period. See Exhibit A.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfer(s) had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

**COUNT II**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

38. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39. To the extent one or more of the Transfer(s) identified on Exhibit A was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, and/or was a debt incurred by a non-debtor but paid by the Debtor, Plaintiff pleads in the alternative that the Debtor did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtor was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B. The Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C. The Debtor intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

40. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

**COUNT III**
**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

41. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

42. To the extent any of the Transfer(s) identified on Exhibit A cleared the Disbursement Account after the Petition Date, including any Post-Petition Transfers currently listed and identified on Exhibit A, and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

**COUNT IV**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

44. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and/or any Post-Petition Transfers pursuant to 11 U.S.C. § 549 (collectively, the "Avoidable Transfers").

45. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

**COUNT V**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

48. Defendant is a transferee of transfers avoidable under sections 547, 548, and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

50. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff previously allowed by the Debtor or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

A. On Plaintiff's First, Second, Third and Fourth Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 549 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest

extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: December 21, 2016

*/s/ Ronald S. Gellert*

Ronald S. Gellert (DE 4259) *(application pending)*
Brya M. Keilson (DE 4643) *(application pending)*
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5800
Fax: (302) 425-5814
Email: rgellert@gsbblaw.com

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary D. Underdahl, Esq., MN SBN 0301693
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 406-9665 ext. 857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY 10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Special Counsel for the Official Committee of Unsecured Creditors*